**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| DATAMOTION TEXAS, LLC, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>COMERICA BANK, et al. )<br>)<br>    Defendants. ) | Case No. 2:15-cv-00894-JRG<br>LEAD CASE<br><br><br>**DEMAND FOR JURY TRIAL** |
| DATAMOTION TEXAS, LLC, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOHN HANCOCK FINANCIAL )<br>CORPORATION, JOHN HANCOCK )<br>LIFE INSURANCE COMPANY )<br>(U.S.A.), and THE MANUFACTURERS )<br>LIFE INSURANCE COMPANY, )<br>)<br>    Defendants. )<br>) | Case No. 2:15-cv-00892-JRG<br><br>**DEMAND FOR JURY TRIAL** |

**HANCOCK'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6)**

# TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT ............................ 1

II.    INTRODUCTION ........................................................................................................ 1

III.   BACKGROUND .......................................................................................................... 2

IV.    LEGAL STANDARDS ................................................................................................ 4

      A.    A Motion To Dismiss Is A Proper Vehicle For Determining
           Whether Claims Are Directed To Patent Eligible Subject Matter ........................... 4

      B.    Abstract Ideas Are Not Patentable Subject Matter.................................................... 7

      C.    Implementations of Abstract Ideas Utilizing Only Known
           Components Performing Routine Functions Are Not Patent Eligible
           Subject Matter .......................................................................................................... 8

V.     ARGUMENT .............................................................................................................. 10

      A.    The '967 Patent Is Directed To An Abstract Idea.................................................... 11

      B.    The Asserted Claims Of The '967 Patent Lack Additional Elements
           That Transform The Claims Into Patent-Eligible Subject Matter ........................... 14

VI.    CONCLUSION............................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014)................................................................2, 5, 7, 8, 9, 10, 13

*AmDocs(Israel) Ltd. v. Openet Telecom, Inc.,*
2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014)........................................9

*In re Bilski,*
545 F.3d 943 (Fed. Cir. 2008)................................................................................5

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014).......................................................................5, 13

*buySAFE, Inc. v. Google, Inc.,*
964 F. Supp. 2d 331 (D. Del. 2013).......................................................................5

*Clear with Computers, LLC v. Altec Inds., Inc.,*
2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015)..........................................5

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
21 F. Supp. 3d 758, 762 (E.D. Tex. 2014).............................................................5

*Cogent Med., Inc. v. Elsevier Inc.,*
2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) ....................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
2013 U.S. Dist. LEXIS 107184 (D.N.J. July 31, 2013)......................................6, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
776 F.3d 1343 (Fed. Cir. 2014)...........................................9, 10, 12, 13, 14, 16, 17

*CyberFone Sys., LLC v. Cellco P'ship,*
885 F. Supp. 2d 710 (D. Del. 2012).......................................................................6

*CyberFone Sys., LLC v. CNN Interactive Group, Inc.,*
558 Fed. App'x 988 (Fed. Cir. 2014)....................................................................13

*I/P Engine, Inc. v. AOL Inc.,*
576 Fed. App'x 982 (Fed. Cir. Aug. 15, 2014)...............................................6, 8, 10

*Intellectual Ventures I LLC v. Symantec Corporation,*
2015 U.S. Dist. LEXIS 52527 (D. Del. Apr. 22, 2015).........................................13

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
   2015 U.S. Dist. LEXIS 69363 (E.D. Tex. May 29, 2015)......................................................15

*Landmark Tech., LLC v. Assurant, Inc.*,
   2015 U.S. Dist. LEXIS 94511 (E.D. Tex. July 14, 2015)......................................................15

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 829 (E.D. Tex. 2014)....................................................................................15

*Mayo Collaborative Servs. v. Prometheus Labs.*,
   132 S. Ct. 1289 (2012).......................................................................................................6, 7

*McRO, Inc. v. Activision Publ'g., Inc.*,
   2014 U.S. Dist. LEXIS 135152 (C.D. Cal. Sept. 22, 2014).....................................................9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)..............................................................................................8

*Planet Bingo, LLC v. VKGS LLC*,
   576 Fed. App'x 1005 (Fed. Cir. Aug. 26, 2014).....................................................9, 10, 14, 15

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010)..............................................................................................5

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).......................................................................2, 4, 6, 9, 12, 14

**Statutes**

35 U.S.C. § 101.......................................................................2, 4, 5, 6, 7, 9, 10, 12, 14

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants John Hancock Financial Corporation, John Hancock Life Insurance Company (U.S.A.), and The Manufacturers Life Insurance Company (collectively, "Hancock" or "Defendants") respectfully submit this Motion to Dismiss for failure to state a claim.

## I.      STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT

Whether DataMotion Texas LLC's ("DataMotion's") Amended Complaint should be dismissed for failure to state a claim because the asserted claims of U.S. Patent No. 8,447,967 ("the '967 patent") are directed to non-patentable subject matter and, therefore, invalid.

## II.     INTRODUCTION

The Court should dismiss DataMotion's Amended Complaint because all five claims of the '967 patent are directed to non-patentable subject matter and are, therefore, invalid.

Specifically, the '967 patent claims systems and methods directed to the abstract concept of providing a security option to a user when sending an email.  The claims represent no more than a computer implemented version of choosing between a traditional envelope and a security envelope when sending a message.

The patentees themselves acknowledge in the specification of the '967 patent that using a security envelope to mail a physical letter via the postal system is the human analogue to the claimed concept.  *See, e.g.,* '967 patent, 5:31-34 ("The tool in essence places the electronic message in the electronic equivalent of a secure envelope. . .").  The '967 patent contains no inventive concept or other technological innovation.  On the contrary, the claimed systems and methods are implemented using entirely generic and conventional devices – *i.e.,* (i) a generic email application, and (ii) a generic email server capable of sending a secure message.  The claims provide no further detail regarding how the secure email sending process is to be selected by the user or how secure access to the message is then to be provided to the intended recipient.

Because each of the five claims of the '967 patent is directed to an abstract idea without an inventive concept, none are eligible for patent protection.  The '967 patent is, therefore, invalid and DataMotion's claims should be dismissed.

Moreover, dismissal at this early stage of the case is entirely appropriate.  It is well-settled that the threshold issue of whether the subject matter of the asserted claims is eligible for patent protection under 35 U.S.C. § 101 is a matter of law appropriately resolved on a Rule 12 Motion.  *See, e.g., Ultramercial, Inc. v.* Hulu*, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (Mayer, J., concurring).  Here, no claim construction, discovery or additional proceedings are necessary for, or would aid in, the resolution of the instant motion.  The Court need only review the claims of the '967 patent and apply the controlling standards set forth in the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and its progeny.  Since *Alice,* courts have consistently held that claims similar to those found in the '967 patent are invalid because they are directed to abstract ideas not entitled to patent protection and recite only generic and conventional elements which "cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id.* at 2358.  The rationale underlying those post-*Alice* decisions (discussed further below) applies equally to the claims at issue in this case.

For the reasons set forth herein, this case should be dismissed.

## III.  BACKGROUND

On May 28, 2015, DataMotion commenced an action for patent infringement against Hancock and six other entities.  A seventh entity was sued on June 2, 2015.  In its original Complaint against Hancock, DataMotion asserted United States Patent No. 6,684,248 ("the '248 patent").  Dkt. No. 1.  Before Hancock's response to DataMotion's original Complaint was due, DataMotion filed an Amended Complaint asserting the '967 patent and no longer asserting the '248 patent against Hancock.  Dkt. No. 14.

The '967 patent recites the following claims:

**1.** An electronic mail system comprising:

an email application having an interface for selectively initiating a first email sending process or a second email sending process for an email having content;

a first email server that routes the email content toward an intended recipient without encrypting the email content when the first email sending process being initiated via the interface; and

a second email server that initiates a secure message transaction for delivering the email content to an intended recipient when the second email sending process being initiated via the interface, the secure message transaction including providing secure access to the email content, irrespective of whether the intended recipient's email application is decryption enabled.

**2.** An electronic mail system according to claim **1** wherein the second email server causes an SSL link to be sent to the intended recipient via an email protocol, the SSL link when activated providing access to the email content.

**3.** An electronic mail system according to claim **1** further comprising a firewall, wherein the email application, first email server and second email server reside on a secure side of the firewall.

**4.** A method for transmitting an email comprising the steps of:

launching an email application, the email application including an interface;

selecting one of a plurality of email transmitting processes via the interface;

if the selected email transmitting process requires secure message transmission to a recipient, inserting email content into an electronic message addressed to a server that initiates a secure link with the recipient.

**5.** The method of claim **4** comprising the further step of providing the recipient access to the email content via the secure link.

**6.** The method of claim **4** wherein the inserting step includes the steps of attaching a document file having the email content to the electronic message, the email content including address information and message information for the email.

The claims provide no further detail regarding the claimed e-mail applications or e-mail servers.

The specification of the '967 patent only describes the "invention" as being implemented

on a generic computer using known e-mail applications:

> [A] secure message-handling tool is provided that can be
> displayed with the user interface of an existing message handling
> application on a personal computer.  A message handling
> application of the type suitable for this purpose is the e-mail
> client programs, distributed under the names Outlook and
> Outlook Express by Microsoft Corporation of Redmond, Wash.
> It should be noted, however, that while the present invention is
> illustrated and described with particular reference to Outlook and
> Outlook Express, it is equally adapted to be used with other e-
> mail client programs, such as Lotus Notes, Eudora and the like.
> It will be appreciated by those skilled in the art that the
> subsequent description using Outlook would enable one to make
> and use of the present invention with any e-mail client program.

'967 patent, 2:46-60; *see also* '967 patent, 4:7-9 ("A button interface is installed into both the toolbar and menubar of Outlook and Outlook Express by using the standard Windows API calls.").  Alternatively, according to the specification, the "invention" may also be implemented on generic wireless devices:

> Furthermore, although the present invention has been described
> for use on a personal computer running an e-mail application.
> [sic] Those skilled in the art will understand that a wireless
> device may be substituted for the personal computer in any of the
> embodiments described herein.  Wireless devices may include,
> but are not limited to, e-mail enabled pagers and cell phones,
> PDAs and other wireless e-mail systems.

'967 patent, 5: 43-49.

## IV.    LEGAL STANDARDS

### A.    A Motion To Dismiss Is A Proper Vehicle For Determining Whether Claims Are Directed To Patent Eligible Subject Matter.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

Patentability under 35 U.S.C. §101 is a threshold issue properly decided on a Rule 12 motion because whether claims are directed to patentable subject matter is a question of law that is dispositive of all of Plaintiff's claims.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713,

722 (Fed. Cir. 2014) (stating that "questions concerning patent-eligible subject matter under 35 U.S.C. §101 [are reviewed] without deference);" *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("Whether a claim is drawn to patent-eligible subject matter is an issue of law that we review de novo"); *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (en banc), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).  In addition, the proper resolution of this issue at the preliminary stages of a case conserves both judicial and party resources.  *See, e.g., buySAFE, Inc. v. Google, Inc.*, 964 F. Supp. 2d 331, 337 (D. Del. 2013) (granting Rule 12(c) motion on patentable subject matter), *aff'd* 765 F.3d 1350 (Fed. Cir. 2014); *Clear with Computers, LLC v. Altec Inds., Inc.*, No., 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 762 (E.D. Tex. 2014).

Patents are only available to protect concrete and tangible inventions that claim "a new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. §101 ("Section 101").  In addition to restricting patents to these delineated categories, Section 101 has long been interpreted to contain a further important limitation: "Laws of nature, natural phenomena, *and abstract ideas* are not patentable."  *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (emphasis added).  Instead, these "building blocks of human ingenuity" must remain free to all.  *Id.* at 2354-55 (internal quotations and citations omitted).  "The abstract ideas category embodies the longstanding rule that an idea of itself is not patentable."  *Id.* at 2355.  Indeed, "abstract ideas, no matter how groundbreaking, innovative, or even brilliant, are outside what the statute means by new and useful process, machine, manufacture, or composition of matter."  *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (citing *Alice*, 134 S. Ct. at 2357; *Myriad*, 133 S. Ct. at

2116-17).  Furthermore, the Supreme Court has ruled that the prohibition on patenting of abstract ideas applies even if the particular abstract idea at issue is narrow.  *See Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1303 (2012).

Here, the Court need only review the claims of the '967 patent to determine the discrete, dispositive legal issue of patentability.  Formal claim construction is not required.  *Ultramercial*, 772 F.3d at 719; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 107184, at *13 (D.N.J. July 31, 2013) (unpublished) ("Claim construction is not required to resolve this motion [to dismiss] and determine that the Patents-in-Suit are invalid."), *aff'd*, 2014 U.S. App. LEXIS 24258 (Fed. Cir. 2013); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012), *aff'd sub nom. CyberFone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. App'x 988 (Fed. Cir. 2014) (concluding that the court "may proceed [to decide the summary judgment motion on Section 101 grounds] without the benefit of claim construction.").

As recognized by former Chief Judge Rader, early dispositive motions in patent cases are the key to "removing the abusers from the system before they can do their damage by imposing expense on the system, for example, when they seek nuisance settlements."  *See also I/P Engine, Inc. v. AOL Inc.*, 576 Fed. App'x 982, 992 (Fed. Cir. 2014) (unpublished) (Mayer, J., concurring) (explaining that "if [the patent eligibility] determination had been made in the first instance as directed by the Supreme Court [in *Alice*], unnecessary litigation, and nearly two weeks of trial and imposition on citizen jurors, could have been avoided.").

In the present case, it is plain from the face of the asserted claims that they are directed to no more than "an abstract idea garnished with accessories."  *Ultramercial*, 772 F.3d at 719 (internal quotations and citations omitted); *see also Content Extraction*, 2013 U.S. Dist. LEXIS

107184, at *13-14 (claim construction unnecessary where "basic character of the claimed subject matter" in dispute is clearly evident), *aff'd*, 776 F.3d 1343 (Fed. Cir. 2014).  Preliminary determination of whether such claims are directed to patentable subject matter is both appropriate and desirable to avoid unnecessary litigation of invalid claims.

### B.    Abstract Ideas Are Not Patentable Subject Matter.

Section 101 provides for four categories of patent-eligible subject matter: processes, machines, manufactures, and compositions of matter.  35 U.S.C. § 101.  It also "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice*, 134 S. Ct. at 2354 (internal quotations and citations omitted).  The Supreme Court, in *Mayo* and *Alice*, identified a two-step analysis to be used "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 134 S. Ct. at 2355.  First, a court should "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea.  *Id.* (internal citations omitted).  If the claims are directed to such an ineligible concept, then the court must determine whether the claims contain "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Id.* (internal quotations and citations omitted).  This second step of the *Alice* framework requires that "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"  *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1297) (alteration in original).  "'Simply appending conventional steps, specified at a high level of generality' [is] not 'enough' to supply an 'inventive concept.'"  *Id.* (quoting *Mayo*, 132 S. Ct. at 1300).

### C.   Implementations of Abstract Ideas Utilizing Only Known Components Performing Routine Functions Are Not Patent Eligible Subject Matter.

The Supreme Court has made clear that claiming the implementation of an abstract idea using known components for their typical purpose is not sufficient to salvage claims.  *Alice*, 134 S. Ct. at 2359 (explaining that the inclusion of "'well-understood, routine, conventional activit[ies]' previously known to the industry" is insufficient to take them within the scope of patentable subject matter) (citing *Mayo*, 132 S. Ct. at 1294); *see also, I/P Engine*, 576 Fed. App'x at 992 (Mayer, J., concurring) (explaining that "[a] patentee does not uphold his end of this bargain if he seeks broad monopoly rights over a fundamental concept or basic idea without concomitant contribution to the existing body of scientific and technological knowledge."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").  Moreover, the "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment."  *Alice*, 134 S. Ct. at 2358 (internal citation and quotation marks omitted).  In *Alice*, the petitioner argued that the system claims recited "specific hardware" configured to perform "specific computerized functions."  *Alice* at 2360.  However, the Court explained that this "specific" hardware – "a 'data processing system' with a 'communications controller' and 'data storage unit,' for example . . . is purely functional and generic.  *Id.* (internal citations omitted).  As explained by the Court, "[n]early every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims" and therefore "none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking the use of the method to a particular

technological environment, that is, implementation via computers." *Id.* (internal citations and quotations omitted).

Recent Federal Circuit cases applying *Alice* have consistently recognized and reinforced that the limits of patent eligible subject matter do not extend to claims that simply implement a particular application of an abstract idea utilizing known components, such as computer components, performing their usual function. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347-1348 (Fed. Cir. 2014); *Ultramercial*, 772 F.3d at 716-717; *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1009 (Fed. Cir. Aug. 26, 2014) (unpublished).  District courts applying the *Alice* framework have similarly found a wide range of patents invalid as claiming an abstract idea implemented using generic components, including patents directed to "using a database to compile and report on network usage information;[1] "maintaining and searching a library of information;"[2] and "rules-based lip synchronized animation on a computer."[3]

Thus, it is now well established that the introduction of computer components performing functions typical of computers into claims does not alter the Section 101 analysis.  *See Alice*, 134 S. Ct. at 2357.  "Given the ubiquity of computers . . . wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'"  *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1297).  "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of [the Section 101] analysis, it

---

[1] *AmDocs(Israel) Ltd. v. Openet Telecom, Inc.*, 2014 U.S. Dist. LEXIS 152447, AT *21 (E.D. Va. Oct. 24, 2014).

[2] *Cogent Med., Inc. v. Elsevier Inc.*, 2014 U.S. Dist. LEXIS 139856, at *11 (N.D. Cal. Sept. 30, 2014).

[3] *McRO, Inc. v. Activision Publ'g., Inc.*, 2014 U.S. Dist. LEXIS 135152, at *20 (C.D. Cal. Sept. 22, 2014).

must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347-48 (internal citations omitted).  Rather, for computer components to provide the necessary "something else" the claimed invention must "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *I/P Engine*, 576 Fed. App'x at 992 (unpublished) (quoting *Alice*, 134 S. Ct. at 2359)).

Likewise, including the use of generic computer peripherals performing well-understood, routine, and conventional activities does not render an abstract idea patent-eligible. *Content Extraction*, 776 F.3d, at 1348 (internal citations omitted); *Planet Bingo*, 576 Fed. App'x at 1008. For example, implementing an abstract idea with a scanner and a computer does not transform the abstract idea into patent-eligible subject matter. *Content Extraction*, 776 F.3d at 1348 (explaining that the "use of a generic scanner and computer" is not an 'inventive concept.'"). Similarly, "claims [that] required 'a computer with central processing unit,' 'a memory,' 'an input and output terminal,' 'a printer,' 'a video screen,' and 'a program . . . enabling' the steps of managing a game of bingo" were held invalid by the Federal Circuit as "recit[ing] a generic computer implementation of the covered abstract idea." *Planet Bingo*, 576 Fed. App'x at 1008.

## V.   ARGUMENT

The asserted claims of the '967 patent are invalid under the controlling *Alice* framework because they are directed to an abstract idea: providing an option to send a message securely. The elements of the each of the five claims of the '967 patent add nothing that provides the "something more" necessary to render the claims valid under Section 101. *Alice*, 134 S. Ct. at 2354.   Rather, they merely describe using well-known components like existing e-mail applications and generic servers to send a message securely to an intended recipient.  Merely "linking the use of the method [and system] to a particular technological environment, that is,

implementation via computers" in the claimed manner is insufficient to render the claims of the '967 patent valid.  *Id.*

### A.    The '967 Patent Is Directed To An Abstract Idea.

The claims of the '967 patent are clearly directed to an abstract idea.  For example, consider Independent Claim 1:

> **1.** An electronic mail system comprising:
>
> *an email application* having an interface for selectively initiating a first email sending process or a second email sending process for an email having content;
>
> *a first email server* that routes the email content toward an intended recipient without encrypting the email content when the first email sending process being initiated via the interface; and
>
> *a second email server that initiates a secure message transaction* for delivering the email content to an intended recipient when the second email sending process being initiated via the interface, the secure message transaction including providing secure access to the email content, irrespective of whether the intended recipient's email application is decryption enabled.

Independent Claim 1 recites only the following known elements:  (1) a generic email application (e.g., Microsoft Outlook); (2) a generic server for sending unencrypted messages; and (3) a second generic server for sending secure messages.  Claim 1 offers no description of either a method for enabling the user to select a secure email sending process or a method for sending the email message securely.  It claims only the abstract idea of providing an option to send the message securely.  Claims 2 and 3 (which depend from Claim 1) recite the same abstract idea – sending a secure message, merely adding other well-known computer features – i.e., an "SSL link" (claim 2) and a "firewall" (claim 3).[4]

---

[4] Those claims in their entirety recite:

> **2.** An electronic mail system according to claim **1** wherein the second email server causes an *SSL link* to be sent to the intended recipient via an email protocol, the SSL link when activated providing access to the email content.

Independent Claim 4 similarly recites only the abstract idea of providing an option to send a secure message as follows:

**4.** A method for transmitting an email comprising the steps of:

*launching an email application*, the email application including an interface;

*selecting one of a plurality of email transmitting processes* via the interface;

if the selected email transmitting process requires secure message transmission to a recipient, inserting email content into an electronic message addressed to *a server that initiates a secure link with the recipient*.

Like Claim 1, Claim 4 does not describe either a specific technology for enabling the user to select a secure email transmitting process or a specific technology for initiating a secure link with the recipient.  Rather, it claims only the abstract idea of providing an option to send the message securely.  Dependent Claims 5 and 6 add nothing more than known email features, such as a link to content (claim 5) and attachments to email (claim 6).[5]  *See, e.g., Content Extraction*, 776 F.3d at 1348 (confirming that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" because "for the purposes of [the] §101 challenge, 1) the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea, and 2) [the independent claims] are representative.").  Although dependent claims 2-3 and 5-6 add certain additional limitations, none of those limitations changes the fact that "the concept embodied by the majority of the limitations [of all

---

**3.** An electronic mail system according to claim **1** further comprising a *firewall*, wherein the email application, first email server and second email server reside on a secure side of the firewall.

[5] Those claims in their entirety recite:

**5.** The method of claim **4** comprising the further step of providing the recipient access to the email content via the secure link.

**6.** The method of claim **4** wherein the inserting step includes the steps of attaching a document file having the email content to the electronic message, the email content including address information and message information for the email.

the claims in the patent] describe [] only the abstract idea[s]" of sending a message securely. *Ultramercial*, 772 F.3d at 715.

Because each of the five claims of the '967 patent recites nothing more than the abstract idea of providing an option to send a message securely, they are no different from the well-known human analogue of choosing between a security envelope and a regular envelope to send a physical letter via the postal system. *See, e.g.,* '967 patent, 5:31-34 ("The tool in essences places the electronic message in the electronic equivalent of a secure envelope...").

Not surprisingly, the Federal Circuit and district courts have routinely held that similar claims directed generally to information transmission via generic computers, without more, constitute abstract ideas and, therefore, patent-ineligible subject matter. *See, e.g., CyberFone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. App'x 988 (Fed. Cir. 2014) (finding that "using categories to organize, store, and *transmit* information" was an abstract idea) (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding that "receiving a request" and "*transmitting* an offer in return" were abstract ideas) (emphasis added); *Intellectual Ventures I LLC v. Symantec Corporation*, C.A. No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 52527, * (D. Del. Apr. 22, 2015) ("[r]eceiving and *sending information*. . . over a network 'is not even arguably inventive'") (*quoting buySAFE*, 765 F.3d at 1355) (emphasis added). Where, as here, "humans have always performed [this] function[]" with and without the assistance of email programs and servers, the idea is indisputably abstract. *Content Extraction*, 776 F.3d at 1347.

Having established that the claims at issue are drawn to an abstract idea not eligible for patent protection, the analysis moves to the second step in the *Alice* framework. *See Alice*, 134 S. Ct. at 2355.

**B.     The Asserted Claims Of The '967 Patent Lack Additional Elements That Transform The Claims Into Patent-Eligible Subject Matter.**

As explained above, to be directed to patent-eligible subject matter, claims involving an abstract idea must "do significantly more than simply describe that abstract [idea]." *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S. Ct. at 1297).  The claims of the '967 patent do not.  To contain the "significantly more" required by Section 101, claims must "contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Id.* (quoting *Alice*, 134 S. Ct. at 2357).  They "must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]" and "[t]hose 'additional features' must be more than 'well-understood, routine, conventional activity.'"  *Id.* (quoting *Mayo*, 132 S. Ct. at 1298); *see also Ultramercial*, 772 F.3d 709 at 716.  The claims at issue in the present case contain no such additional features.  On the contrary, as stated above, each of the five claims of the '967 patent recites the use of a generic "email application with an interface" with generic "email server(s)."  Email applications and email servers are generic, known components performing their typical functions, which the Supreme Court and Federal Circuit have consistently held are directed to ineligible subject matter.

For example, in *Content Extraction*, the Federal Circuit held that claims directed to a scanner and a computer were ineligible for patent protection under Section 101.  776 F.3d at 1348 (citing *Alice*, 134 S. Ct. at 2359).  The court explained that the incorporation of known components, such as scanners and computers that are simply performing their routine functions, insufficiently limits the claim to a patentable application of an abstract idea.  *Id.*

Similarly, in *Planet Bingo*, the claims at issue "required 'a computer with central processing unit,' 'a memory,' 'an input and output terminal,' 'a printer,' 'a video screen,' and 'a program . . . enabling' the steps of managing a game of bingo."  576 Fed. App'x at 1008.  The

Federal Circuit invalidated those claims because they "recite[d] a generic computer implementation of the covered abstract idea." *Id.*[6]

The claims of the '967 patent are no different. Apart from claiming the abstract idea of sending message securely, the asserted claims merely recite only general "email application(s)" and "email server(s)" which are commonly used to perform the same functions that they perform in the claimed systems and methods. Moreover, the specification of the '967 patent describes the "invention" as being implemented on a generic personal computer using existing e-mail applications:

> [A] secure message-handling tool is provided that can be displayed with the user interface of an existing message handling application on a personal computer. A message handling application of the type suitable for this purpose is the e-mail client programs, distributed under the names Outlook and Outlook Express by Microsoft Corporation of Redmond, Wash. It should be noted, however, that while the present invention is illustrated and described with particular reference to Outlook and Outlook Express, it is equally adapted to be used with other e-mail client programs, such as Lotus Notes, Eudora and the like. It will be appreciated by those skilled in the art that the subsequent description using Outlook would enable one to make and use of the present invention with any e-mail client program.

'967 patent, 2:46-60; *see also* '967 patent, 4:7-9 ("A button interface is installed into both the toolbar and menubar of Outlook and Outlook Express by using the standard Windows API calls."). Alternatively, according to the specification, the "invention" may also be implemented on known wireless devices:

> Furthermore, although the present invention has been described for use on a personal computer running an e-mail application.

---

[6] *See also, e.g., Kroy IP Holdings, LLC v. Safeway, Inc.*, Case No. 2:12-v-800-WLB, 2015 U.S. Dist. LEXIS 69363, *41 (E.D. Tex. May 29, 2015) ("The computers and computer-related features recited in the claims are generic, commonplace components; the claims are not directed to an improvement in computer technology . . ."); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d, 829, 941 (E.D. Tex. 2014); *Landmark Tech., LLC v. Assurant, Inc.*, Case No. 6:15-cv-76-RWS-JDL, 2015 U.S. Dist. LEXIS 94511, *9 -*17 (E.D. Tex. July 14, 2015).

> [sic] Those skilled in the art will understand that a wireless device may be substituted for the personal computer in any of the embodiments described herein. Wireless devices may include, but are not limited to, e-mail enabled pagers and cell phones, PDAs and other wireless e-mail systems.

'967 patent, 5: 43-49.

In short, there is simply no "inventive concept" whatsoever in DataMotion's use of standard e-mail programs and secure servers "to perform well-understood, routine, and conventional activities commonly used in industry." *Content Extraction*, 776 F.3d at 1348 (citing *Alice*, 134 S. Ct. at 2359). The asserted claims "merely recite the use of this existing . . . technology to" provide the user of the email application with the option to send messages securely. The claims do not describe any methodology for how that functionality is to be provided to the end user of the email application or how the message is to be sent securely to a recipient."

As set forth above, nothing in the dependent claims changes this analysis. "While these claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea. *Content Extraction*, 776 F.3d at 1349. Rather, dependent claims 2 and 3 of the '967 patent recite conventional steps prevalent in the industry at the time of the invention – *i.e.*, sending a message using an SSL link, positioning the email server on the secure side of a firewall, sending the recipient an email with a link, or sending the recipient an email with an attachment. These limitations each describe well-known conventional steps and do not add anything inventive to the claims.

## VI. CONCLUSION

For the reasons set forth above, this case should be dismissed. The claims of the '967 patent recite a generic implementation of an abstract idea: providing an option to send a message

securely.  Implementing this abstract idea with a known email application installed on a general computer and generic servers is, at most, an "attempt to limit the abstract idea . . . to a particular technological environment," which "has been held insufficient to save a claim" from being invalid.  *Content Extraction*, 776 F.3d at 1348 (citing *Alice*, 134 S. Ct. at 2358; *Ultramercial*, 772 F.3d at 715-16; *buySAFE*, 765 F.3d at 1355).  Accordingly, the Court should dismiss DataMotion's Amended Complaint with prejudice.

Dated: September 23, 2015                    Respectfully submitted,

                                             */s/ Jennifer Parker Ainsworth*
                                             Jennifer Parker Ainsworth
                                             TX State Bar No. 00784720
                                             jainsworth@wilsonlawfirm.com
                                             WILSON, ROBERTSON & CORNELIUS, P.C.
                                             909 ESE Loop 323, Suite 400
                                             P.O. Box 7339 [75711]
                                             Tyler, Texas 75701
                                             (903) 509-5000 (Telephone)
                                             (903) 509-5092 (Facsimile)

                                             Robert S. Frank, Jr.
                                             Margaret E. Ives
                                             CHOATE HALL & STEWART LLP
                                             Two International Place
                                             Boston, MA 02110
                                             (617) 248-5000 (Telephone)
                                             (617) 248-4000 (Facsimile)
                                             rfrank@choate.com
                                             mives@choate.com

                                             ATTORNEYS FOR DEFENDANTS
                                             JOHN HANCOCK FINANCIAL C
                                             ORPORATION, JOHN HANCOCK LIFE
                                             INSURANCE COMPANY (U.S.A.), and
                                             THE MANUFACTURERS LIFE
                                             INSURANCE COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 23rd day of September, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

<u>*/s/ Jennifer P. Ainsworth*</u>
Jennifer P. Ainsworth