# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DATAMOTION TEXAS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN HERITAGE LIFE INSURANCE COMPANY and AMERICAN HERITAGE INSURANCE GROUP, LLC,<br><br>    Defendants. | Civil Action No. 2:15-cv-00890<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff, DataMotion Texas, LLC ("DataMotion"), by and through its undersigned counsel, submits this Amended Complaint against the above-named Defendants, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of United States Patent No. 6,684,248 (the "'248 patent") and 8,447,967 (the "'967 patent") (collectively, the "patents-in-suit").

## THE PARTIES

2. Plaintiff, DataMotion Texas, LLC, is a Texas company.

3. Upon information and belief, Defendant, American Heritage Life Insurance Company ("AHLIC") is a corporation established under the laws of the State of Florida, with its principal place of business located at 1776 American Heritage Life Drive, Jacksonville, Florida 32224.

4. Upon information and belief, Defendant, American Heritage Insurance Group, LLC ("AHIG") is a corporation established under the laws of the State of Ohio, with its principal place

of business located at 3182 Portsmouth Avenue, Cincinnati, Ohio 45208.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. The Court has personal jurisdiction over Defendants, including because Defendants have minimum contacts within the State of Texas; Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas; Defendants regularly conduct business within the State of Texas; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of Texas, including at least by virtue of Defendants' secured email systems and methods, including those accused systems and methods described herein, which are at least used in and/or accessible in the State of Texas. Further, this Court has general jurisdiction over Defendants, including due to their continuous and systematic contacts with the State of Texas, including because Defendants have committed patent infringement in the State of Texas.

7. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(b), including because Defendants have purposefully availed themselves of the privileges of conducting business in this District; Defendants regularly conduct business within this District; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in this District, including at least by virtue of Defendants' secured email systems and methods which are at least used in and/or accessible in this District.

## BACKGROUND

A.  *DataMotion, Inc.*

8. DataMotion's affiliated entity, DataMotion, Inc., was founded in 1999 by security software veterans with experience in developing and architecting data security products for military and enterprise customers. It has grown into a company that now employs 36 people.

9. DataMotion, Inc. is an online communications security company that has invested substantial resources into the development and sale of software for securely delivering data, such as email, files, and other information.

10. DataMotion, Inc. has received accolades in recognition of its groundbreaking technological developments and outstanding service in the field of online security and encryption. Notably, DataMotion has been recognized by Gartner, in its "Platform as a Service: Definition, Taxonomy and Vendor Landscape, 2011," and was named to CIO Review's "20 Most Promising Healthcare Consulting Providers" list. DataMotion has received full accreditation by the Direct Trusted Agent Accreditation Program (DTAAP) for HISPs from DirectTrust.org and the Electronic Healthcare Network Accreditation Commission (EHNAC). Additional recognition has come from the SC Magazine Awards, the MSD2D People's Choice awards, and the Microsoft Partner Network. DataMotion, Inc. has invested a significant amount of financial and intellectual capital into the development of pioneering technologies such as the method for secure transmission of a message via a network where a recipient of the message need not be a party to the network or maintain an active address in the network, which is disclosed in the '248 patent.

B.  *The '248 Patent*

11. On January 27, 2004, the '248 patent, entitled "Method of Transferring Data From a Sender to a Recipient During Which a Unique Account for the Recipient is Automatically

Created if the Account Does Not Previously Exist" was duly and lawfully issued by the United States Patent and Trademark Office. The claims of the '248 patent are entitled to the benefit of U.S. Provisional Application No. 60/132,203 filed May 3, 1999, U.S. Provisional Application No. 60/132,790 filed May 6, 1999 and U.S. Provisional Application No. 60/198,033 filed Apr. 18, 2000.

12. The claims of the '248 Patent cover, inter alia, methods for providing a secure transfer of data comprising: transferring the data to a secure database server, and upon the sender initiating a transfer of the data to a recipient, causing an inquiry to be made as to whether the recipient has an affiliation with the a network; and upon a determination of no affiliation, causing the network to dynamically create an account for the recipient comprising a storage location; storing data addressed to the recipient in the storage location; providing a notification to the recipient of the data being available; and transferring the data to the recipient upon request.

13. The claims of the '248 Patent also cover, inter alia, methods for providing a secure transfer of data comprising: transferring the data, including an address of a recipient, from the sender to a secure database server, causing the secure database server to create a storage location for the recipient; causing the secure database server to place data addressed to the recipient into an assigned storage location; associating the recipient with the storage location via an identifier; providing a notification to the recipient of the data being available, along with access information corresponding to the identifier for retrieving the data, transferring the addressed data to the recipient upon request; and maintaining the storage location and identifier for subsequent data transfers. The technology recited in the claims of the '248 patent provides an inventive concept and does not claim an abstract idea. The inventive concept greatly enhances and facilitates the operation of a network, such that information may be transmitted securely, to a recipient who has

not installed any specialized software or previously activated an account on the network. Ex. A. at 3:56-62. For example, the '248 patent describes technology that utilizes existing e-mail systems for notification of a secured message, but provides access to the secured message from a database system located at a secured site. *Id*. at 4:26-29.

14. One inventive component of the '248 patent is the claimed methods comprise providing a secure transfer of data from a sender to an out of network recipient who lacks decryption software.

15. The technology claimed in the '248 patent does not preempt all ways for transferring data securely. For example, certain claims comprise a secure database server located in a sender's network creating an account including a storage location for an addressed recipient, providing a notification to the recipient of addressed data being available at the secure database server, transferring secured data to the addressed recipient upon request; and maintaining said storage location and said identifier for subsequent data transfers.

16. Defendants can securely transfer data without infringing the '248 patent using methods that lack the inventiveness of the claimed invention. For example, the prior art cited on the face of the '248 patent remains available for practice by the Defendants, and the '248 patent claims do not preempt practice of those prior art methods. Further, a message may be encrypted using public/private key encryption. '248 Patent, Column 3, Lines 10-15.

17. The '248 patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '248 patent. The claims are specifically directed to the secure transfer of data over a network, using a database server as an intermediary-a process that is only possible in the realm of computer networks.

18. The dependent claims of the '248 patent add additional limitations demonstrating

that they are also not directed to any abstract ideas, contain inventive concepts, and do not preempt all ways of securely transferring data. Claims 2, 10, 11, 14, 20, and 21, for example, specifically limit the type of data being transferred. Claims 6, 7, 8, 16, 17, and 18 limit the circumstances in which the secure data transfer is implemented. Claims 3, 4, 5, 13, 15, 23, and 24 contain specific limitations relating to notifying the recipient of a secure message. Claims 9 and 19 contain specific limitations relating to the use of a wireless terminal by the sender.

19. The technology recited in the claims of the '248 patent provides an inventive concept and does not claim an abstract idea. The inventive concept greatly enhances and facilitates the operation of a network, including so that information may be transmitted securely to a recipient who has not installed any specialized software. '258 Patent, Column 3, Lines 56-62. For example, the '248 patent describes technology that utilizes existing e-mail systems for notification of a secured message, but provides access to the secured message from a database system located at a secured site. *Id*. at 4:26-29.

20. One of many inventive components of the '248 patent is the claimed set of methods for providing a secure transfer of data from a sender to a recipient over a network that the recipient is not necessarily a party to.

21. The claims of the '248 patent set forth the requirements of methods which comprise providing a secure transfer of data comprising: transferring the data, including an address of a recipient, from the sender to a secure database server, causing the secure database server to create a storage location for the recipient; causing the secure database server to place data addressed to the recipient into an assigned storage location; associating the recipient with the storage location via an identifier; providing a notification to the recipient of the data being available, along with access information corresponding to the identifier for retrieving the data, transferring the addressed

data to the recipient upon request; and maintaining the storage location and identifier for subsequent data transfers.

22. The technology claimed in the '248 patent does not preempt all ways for transferring data securely over a network. For example, the claims an intermediate database server. Further, the independent claims require determining whether the addressed recipient has an affiliation with the network. The secure transfer of data need not be accomplished this way. For example, a message may be encrypted using public/private key encryption. *Id*. at 3:10-15.

23. Defendants can securely transfer data without infringing the '248 patent. For example, the prior art cited on the face of the '248 patent remains available for practice by the Defendants, and the '248 patent claims do not preempt practice of those prior art methods.

24. The '248 patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '248 patent. The claims are specifically directed to the secure transfer of data over a network, using a database server as an intermediary-a process that is only possible in the realm of computer networks.

25. The dependent claims of the '248 patent add additional limitations demonstrating that they are also not directed to any abstract ideas, contain inventive concepts, and do not preempt all ways of securely transferring data. Claims 2, 10, 11, 14, 20, and 21, for example, specifically limit the type of data being transferred. Claims 6, 7, 8, 16, 17, and 18 limit the circumstances in which the secure data transfer is implemented. Claims 3, 4, 5, 13, 15, 23, and 24 contain specific limitations relating to notifying the recipient of a secure message. Claims 9 and 19 contain specific limitations relating to the use of a wireless terminal by the sender.

C. *The '967 patent*

26. On May 21, 2013, the '967 patent, entitled "Controlled Message Distribution" was

duly and lawfully issued by the United States Patent and Trademark Office. The claims of the '967 patent are entitled to the benefit of U.S. Provisional Application No. 60/214,934 filed June 29, 2000. *See* attached Exhibit B.

27. The claims of the '967 patent cover, *inter alia*, electronic mail systems comprising an email application having an interface for selectively initiating a first email sending process or a second email sending process; a first email server that routes email content without encryption; and a second email server for delivering encrypted email content for a secure message transaction that provides secure access to the email content, irrespective of whether the intended recipient's email application is decryption enabled.

28. The claims of the '967 patent also cover, *inter alia*, methods for transmitting an email comprising the steps of: launching an email application, the email application including an interface; selecting one of a plurality of email transmitting processes via the interface; if the selected email transmitting process requires secure message transmission to a recipient, inserting email content into an electronic message addressed to a server that initiates a secure link with the recipient.

29. The technology recited in the claims of the '967 patent provides an inventive concept and does not claim an abstract idea. The inventive concept greatly enhances and facilitates the operation of an electronic messaging system, so that, *inter alia*, electronic messages may be transmitted securely to a recipient who has not installed any specialized software. '967 Patent; Col. 5:55-61.

30. One inventive component of the '967 patent comprises providing a secure transfer of electronic message content from a sender to an out of network recipient who lacks decryption software by selecting an email process from an interface.

31. The technology claimed in the '967 patent does not preempt all ways for transferring message content securely. For example, certain claims comprise selecting or selectively initiating an email process to cause a secure server to initiate a secure link to a client computer, providing access to secure electronic message content without the client needing to have decryption software.

32. Defendants can securely transfer message content without infringing the '967 patent using systems and methods that lack the inventiveness of the claimed invention. For example, the prior art cited on the face of the '967 patent remains available for practice by the Defendants, and the claims of the '967 patent do not preempt practice of those prior art methods. Further, message content may be encrypted using public/private key encryption.

33. The claims of the '967 patent cannot be practiced by a human alone and there exists no human analogue to the systems or methods claimed in the '967 patent. The claims are specifically directed to the secure transfer of data over a network, using a server as an intermediary- a process that is only possible in the realm of computer networks.

34. The dependent claims of the '967 patent add additional limitations demonstrating that they are also not directed to any abstract ideas, contain inventive concepts, and do not preempt all ways of securely transferring data. Claims 2 and 5, for example, specifically limit the type of link established between the server and client. Claim 3 limits the locations of the servers. Claim 6 limits the type of data being transferred.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,684,248

35. DataMotion repeats and realleges the allegations of paragraphs 1 through 34 as if fully set forth herein.

36. DataMotion is the assignee and owner of the right, title and interest in and to the

'248 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

37. Defendants have infringed and are now infringing, including literally, jointly, and/or equivalently, the '248 Patent in this judicial district, the State of Texas, and elsewhere in the United States, in violation of 35 U.S.C. § 271 through actions comprising the practicing, making, using, and/or hosting, without authority from Plaintiff, methods for providing a secure transfer of data comprising: transferring the data, including an address of a recipient, from the sender to a secure database server, causing the secure database server to create a storage location for the recipient; causing the secure database server to place data addressed to the recipient into an assigned storage location; associating the recipient with the storage location via an identifier; providing a notification to the recipient of the data being available, along with access information corresponding to the identifier for retrieving the data, transferring the addressed data to the recipient upon request; and maintaining the storage location and identifier for subsequent data transfers.

38. Defendants infringe the '248 Patent by and through at least their practicing, making, using, offering for sale, selling, and/or hosting of methods comprising at least the Allstate Secure Messaging system.

39. On information and belief, Defendants have had at least constructive notice of the '248 Patent pursuant to the Patent Act. Plaintiff reserves the right to take discovery regarding Defendants' first actual notice of the '248 Patent.

40. Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,447,967

41. DataMotion repeats and realleges the allegations of paragraphs 1 through 40 as if fully set forth herein.

42. DataMotion is the assignee and owner of the right, title and interest in and to the '967 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

43. Defendants have infringed and are now infringing, including literally, jointly, and/or equivalently, the '967 Patent in this judicial district, the State of Texas, and elsewhere in the United States, in violation of 35 U.S.C. § 271 through actions comprising the practicing, making, using, and/or hosting, without authority from Plaintiff, methods for transmitting an email comprising the steps of: launching an email application, the email application including an interface; selecting one of a plurality of email transmitting processes via the interface; if the selected email transmitting process requires secure message transmission to a recipient, inserting email content into an electronic message addressed to a server that initiates a secure link with the recipient.

44. Defendants infringe the '967 Patent by and through at least their practicing, making, using, offering for sale, selling, and/or hosting of methods comprising at least the Allstate Secure Messaging system.

45. On information and belief, Defendants have had at least constructive notice of the '967 Patent pursuant to the Patent Act. Plaintiff reserves the right to take discovery regarding Defendants' first actual notice of the '967 Patent.

46. Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

## DAMAGES

47. By way of their infringing activities, Defendants have caused and continue to cause Plaintiff to suffer damages, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

48. Defendants' use of DataMotion's patented technology has caused, is causing and will continue to cause DataMotion irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

49. Plaintiff also requests that the Court make a finding that this is an exceptional case entitling Plaintiff to recover its attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## JURY DEMAND

50. Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

## PRAYER FOR RELIEF

51. Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

A. An adjudication that one or more claims of the Patents-in-Suit have been directly infringed, either literally and/or under the doctrine of equivalents, by Defendants;

B. A preliminary and permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with it, from making, using, offering to sell, or selling in the United States or importing into the United States any devices, methods or

systems that infringe any claim of the Patents-in-Suit, or contributing to or inducing the same by others;

C. An award of damages to be paid by Defendants adequate to compensate DataMotion for Defendants' past infringement of the Patents-in-Suit and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D. That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285;

E. A judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, fees, and prejudgment and post-judgment interest for Defendant's infringement of the Patent-in-Suit as provided under 35 U.S.C. §§ 284 and/or 285; and

F. Any and all further relief for which Plaintiff may show itself justly entitled that this Court deems just and proper.

October 22, 2015                              Respectfully submitted,

*/s/ John J. Edmonds*
John J. Edmonds – Lead Counsel
Texas Bar No. 789758
Stephen F. Schlather
Texas Bar No. 24007993
Shea N. Palavan
Texas Bar No. 24083616
**COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC**
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
Email: jedmonds@cepiplaw.com
            sschlather@cepiplaw.com
            spalavan@cepiplaw.com

*Attorneys for Plaintiff,*
*DataMotion Texas, LLC*

**CERTIFICATE OF SERVICE**

    The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this date. Any other counsel of record will be served by first class mail.

October 22, 2015                                                           /s/ John J. Edmonds
                                                                                     John J. Edmonds