# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DATAMOTION TEXAS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>COMERICA BANK, et al.<br><br>    Defendants. | Case No. 2:15-cv-00894-JRG<br>LEAD CASE<br><br>**DEMAND FOR JURY TRIAL** |
| DATAMOTION TEXAS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN HANCOCK FINANCIAL CORPORATION, JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), and THE MANUFACTURERS LIFE INSURANCE COMPANY,<br><br>    Defendants. | Case No. 2:15-cv-00892-JRG<br><br>**DEMAND FOR JURY TRIAL** |

**REPLY OF DEFENDANTS JOHN HANCOCK FINANCIAL CORPORATION, JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), AND THE MANUFACTURERS LIFE INSURANCE COMPANY <u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

- i -

**TABLE OF CONTENTS**

**Page(s)**

I. The '967 Claims Are Clearly Directed to a Patent-Ineligible Abstract Idea ............................ 1

II. The Claims Are Not Directed to an "Inventive Concept" ........................................................ 3

III. Claim Construction Is Not a Prerequisite to a §101 Analysis .................................................. 7

IV. Prior Art Is Not Relevant to a §101 Analysis ........................................................................... 8

V. Plaintiff's Preemption Argument Is Moot ................................................................................. 8

VI. The '967 Patent Fails the Machine or Transformation Test ...................................................... 9

VII. Conclusion ............................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Servs. v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ............................................................................................... 7

*In re Alappat*,
    33 F.3d 1526 (Fed. Cir. 1994) ............................................................................................... 10

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ......................................................................... 3, 5, 6, 7, 8, 9, 10

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ........................................................................................... 8, 9

*In re Bergy*,
    596 F.2d 952 (CCPA 1979) .................................................................................................... 8

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ............................................................................................................ 9, 10

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................... 7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................................................... 2, 6

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ............................................................................................... 7

*I/P Engine, Inc. v. AOL, Inc.*,
    576 Fed. Appx. 982 (Fed. Cir. 2014) ...................................................................................... 7

*Inventor Holdings, LLC v. Gameloft, Inc.*,
    2015 U.S. Dist. LEXIS 132389 (D. Del. Sept. 30, 2015) ....................................................... 9

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    22 F. Supp. 3d 829 (E.D. Tex. 2014) ...................................................................................... 7

*Mayo Collaborative Servs. v. Prometheus Labs.*,
    132 S. Ct. 1289 (2012) ............................................................................................................ 9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ............................................................................................... 9

*Paone v. Broadcom Corp.*,
   2015 U.S. Dist. LEXIS 109725 (E.D.N.Y. Aug. 19, 2015) ............................................5, 6, 10

*Phoenix Licensing v. CenturyLink*,
   2015 U.S. Dist. LEXIS 134038 (E.D. Tex. Sept. 29, 2015) .......................................................7

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ...............................................................................................10

*SRAM Corp. v. ADII Eng'g.*,
   465 F.3d 1351 (Fed. Cir. 2006) .................................................................................................7

*TQP Dev., LLC v. Intuit Inc.*,
   2014 U.S. Dist. LEXIS 20077 (Feb. 19, 2014) ..............................................................5, 6, 10

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ...................................................................................................7

*Wolf v. Capstone Photography*,
   2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) ........................................................8

**Statutes**

35 U.S.C. § 101 ..................................................................................................... 1, 5, 7, 8, 9

35 U.S.C. § 102 .....................................................................................................................8

35 U.S.C. §§ 102 and 103 .....................................................................................................7

In responding to Hancock's Motion to Dismiss ("Motion"), Plaintiff conflates the relevant tests for determining patentable subject matter under 35 U.S.C. §101 and entirely ignores both the language of the asserted claims and the patentee's express acknowledgment that the purported invention is merely the "electronic equivalent" of placing a message in a secure envelope (*see* '967 patent, 5:31-34).  In doing so, Plaintiff fails to refute Hancock's assertions that the '967 patent claims only an abstract idea and is not directed towards any inventive concept.  Moreover, Plaintiff relies on several misconceptions of the law applicable to dispositive motions based on 35 U.S.C. § 101, including the misconceptions that (1) such motions are premature until claim terms are construed; (2) the Court must consider the prior art when deciding such motions; (3) the claims must be deemed patent eligible if the purported invention does not preempt all uses of the abstract idea; and (4) claiming a general purpose computer programmed to perform the claimed function is sufficient to establish patent eligibility under the "machine or transformation test."  Because none of Plaintiff's arguments have merit, and for the reasons set forth below and in Hancock's opening brief, Hancock's Motion to Dismiss should be granted.

I. **The '967 Claims Are Clearly Directed to a Patent-Ineligible Abstract Idea**

Plaintiff has failed to demonstrate that the '967 patent claims are not directed to an abstract idea.  Plaintiff's vague argument that the '967 patent meets the requirements of §101 because it allegedly claims "the concrete application of *certain* ideas" and "necessitates the use of *discrete* computer hardware and software components configured and programmed in a *particular* way that enable performance of the specified functions" (Opp.[1] at 11) is insufficient. Neither Plaintiff nor the patent claims ever actually describe (1) what the application is; (2) what

---

[1] Hereinafter, "Opp." refers to Plaintiff's Response to Hancock's Motion to Dismiss, [D.I. 60].

the "certain ideas" are; (3) what discrete computer hardware and software components are to be used; or (4) how such components are to be configured and programmed to enable them to perform the specified function. Nor can they. As set forth in Hancock's Motion, the '967 patent claims only the abstract idea of sending mail securely using generic computer components (*i.e.*, an email application and email server).

Unable to escape the patentee's own admission that the '967 patent claimed nothing more than the electronic equivalent of a human placing a message in a secure envelope, Plaintiff repeats the word "tangible" throughout its Opposition in a futile attempt to demonstrate that the claims are comprised of physical components and, therefore, not abstract. *See* Opp. at 11-12 ("tangible email application," "tangible first email server," "tangible email content"). However, the law is well-settled that "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible. The bare fact that a computer exists in the physical rather than purely conceptual realm is 'beside the point.'" *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (*quoting Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014)).

Moreover, Plaintiff's attempt to explain away the statement in column 5, lines 31-34 of the '967 patent as describing only "one aspect of the invention" (Opp. at 16) is belied by the very paragraph of the specification in which that statement appears. That paragraph states:

- ***The subject invention is*** an add-on that seamlessly integrates with MS Outlook 97/98/2000, Express and MS Exchange Client and is a 180 KB file that the user can download from a website to install into a computer. ***The program*** creates a button on Outlook's toolbar, allowing users who use Outlook to send and receive e-mails to now send secure messages and attachments at the click of the mouse. Thus ***the present invention*** can be used without recurring additional training of the user. . . . Basically, the ***present system*** secures the messages and ***is a self-contained tool*** that automatically encrypts and digitally fingerprints the message and attachment without any user intervention. . . . ***The tool in essence places the electronic message into***

> *the electronic equivalent of a secure envelope. . . . The secure envelope is thus the encryption of the message* . . . .

'967 patent, 5:13-36. As set forth above (and contrary to Plaintiff's assertions), the claimed system for placing "the electronic message into the electronic equivalent of a secure envelope" is not "one aspect of the invention," it is the *entire* invention. As further demonstrated by the Figures in the specification, for example FIG. 4, the "invention" merely provides an option to the sender to send an email securely – *i.e.*, "certified."



'967, FIG. 4C. This is no different than providing an option to the sender to send the message in paper form via certified mail through the post office. Because the claims of the '967 patent are directed to an abstract idea, Hancock's motion to dismiss should be granted.

## II.     The Claims Are Not Directed to an "Inventive Concept"

Because the claims of the '967 patent are directed to an abstract idea, they must include additional, inventive features that transform that idea through its application, thereby "ensur[ing] that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (*quoting Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1294 (2012)). However, Plaintiff's entirely unsupported, self-serving statements regarding the patent's purportedly "inventive concepts" are insufficient to demonstrate that the '967 patent claims contain any such "inventive concept."

The only purportedly "inventive" concepts that even can be gleaned from Plaintiff's Opposition are as follows:

- The "*selectively initiating element*" – i.e., "an email application having an interface for selectively initiating" (Opp. at 15; *see also id*. at 6); and

- The "*remote decryption/secure link element*" – i.e., "providing secure access to the email content, irrespective of whether the intended recipient's email application is decryption enabled" or "inserting email content into an electronic message addressed to a server that initiates a secure link with the recipient" (Opp. at 16; *see also id*. at 6).

However, as set forth above, those elements – either individually or in combination – are insufficient to render the claimed abstract idea an inventive concept. Rather, both individually and in combination, those elements constitute nothing more than the idea of using known, generic electronic components to enable a sender to choose to send a message in a secure envelope (regardless of whether the recipient expects to receive it that way).

Plaintiff nonetheless argues that "Hancock's allegations that the claimed invention uses generic, conventional, known, routine, generic or the like components or devices lack factual support" and that "there is no evidence that prior art hardware or software could perform the claimed invention." Opp. at 17-18. Yet these statements are clearly belied by the numerous statements to the contrary contained in the specification of the '967 patent itself. For example, the specification unequivocally states that the claimed system:

- "may be included with *existing* automated message handling software applications" (Abstract; 1:17-19);

- "includes a user interface tool that appears with the user interface of the *conventional* automated message handling system" (Abstract; 1:19-22);

- "can be displayed with the user interface of an *existing* message handling application on a personal computer" – i.e., "the e-mail client programs, distributed under the names Outlook and Outlook Express by Microsoft Corporation of Redmond, Wash." or "other e-mail client programs, such as Lotus Notes, Eudora and the like" (2:47-57);

- is for "use on *a* personal *computer running an e-mail application*" or "*a wireless device*," including but not limited to "e-mail enabled pagers and cell phones, PDAs and other wireless e-mail systems" (5:43-49); and

- "may be distributed for execution across *one or several computing platforms* and *may include wireless* devices*, personal computer and other computing devices capable of handling electronic messages*" (9:49-53).

In fact, in its Opposition, Plaintiff itself acknowledges that the claimed invention comprises "a tool that is added (*e.g.*, a plug-in) onto a *conventional* email application." Opp. at 17 (*citing* '967, 2:46-60, 4:7-9 & 5:21-31, FIG. 2, FIG. 4C) (emphasis added). More importantly, Plaintiff's statements are contradicted by the claim language which recites only "an email application" to select the email sending process and "a . . . server" to send the email securely.[2]

Ignoring this language, Plaintiff instead argues that the '967 claims are analogous to the claimed encryption technology at issue in two cases where §101 motions were denied. Opp. at 18-19 (*citing Paone v. Broadcom Corp.*, 2015 U.S. Dist. LEXIS 109725, at *15-16, 26 (E.D.N.Y. Aug. 19, 2015) and *TQP Dev., LLC v. Intuit Inc.*, 2014 U.S. Dist. LEXIS 20077 (Feb. 19, 2014)). They are not. In *TQP*, the claims at issue were "drawn to a very specific method of changing encryption keys" – i.e., "(1) inputting a seed value to identical pseudo-random number generators in the transmitter and receiver, (2) using the pseudo-random number generators to generate identical new key values at the transmitter and receiver, and (3) changing the key values . . . each time a predetermined number of blocks of data art transmitted." *See TQP,* 2014 U.S. Dist. LEXIS 20077, at *5, 13.[3] The claimed encryption technology at issue in *Paone* was found by that court to have a similar level of technical specificity. *See Paone*, 2015 U.S. Dist. LEXIS 109725, at *15-16. As the *Paone* court expressly noted (and as Plaintiff apparently concedes),

---

[2] Plaintiff's discussion of the dependent claims further demonstrates the lack of any "inventive concept". *See* Opp. at 20 (identifying "the locations of the servers" or the "type of data being transferred" as purportedly "inventive").

[3] It is also worth noting that *TQP* predated *Alice* and, therefore, did not have the benefit of the Supreme Court's analysis of the §101 issue with respect to claims requiring the use of computers.

however, those holdings do *not* stand for the proposition that "a patent on a method of encryption that is not specific enough to claim more than the idea of encryption, or that fails any other requirement of patentability, should not be invalidated." *Id*. (emphasis added). As the *Paone* court further acknowledged, cases involving claims that do "not place any limit on what *kind* of cryptographic method would be used" are distinguishable from *Paone* and *TQP*. *Id*. at 18[4]

Here, in contrast to the encryption technology at issue in *TQP* and *Paone*, the claimed systems and methods of the '967 patent are not drawn to any *specific* method of encrypting data. Rather, as set forth above, the asserted claims are drawn to the *general* idea of providing an option to a user to send an email message securely. Essentially, the '967 claims simply add the words apply it with an "email application" and apply it with "a server" to that abstract idea. *Alice,* 134 S.Ct. at 2355-58. The claims provide no specific algorithm or detailed methodology regarding *how* those messages are to be secured. This case is, therefore, analogous those finding claims ineligible because they were "directed at accomplishing an intangible result by the use of software, but lack[ed] sufficient specificity as to how that result is to be accomplished." *Paone,* at *15-16 (citing Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, 2015 U.S. Dist. LEXIS 56092 (S.D.N.Y. Apr. 28, 2015); *Fidelity Nat'l Info. Servs., Inc. v. DataTreasury Corp.*, 2015 WL 1967328 (P.T.A.B. Apr. 29, 2015)).[5] Because the '967 patent claims only an abstract idea and are not directed toward any "inventive concept," Hancock's motion to dismiss should be granted.

---

[4] Plaintiff also relies on *DDR Holdings*, 773 F.3d 1245 (Fed. Cir. 2014). That case is similarly inapposite. In that case, the claims were directed to a *specific* modification to the use of complex internet protocols to achieve the desired result. *Id.* at 1257. Accordingly, the court emphasized that "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at 1257-58. Unlike that invention, Plaintiff's claimed invention simply recites a well-known idea (secure communication) in a particular, pre-existing technical environment. The abstract concept itself is "plainly identifiable and divisible from the generic computer limitations recited by the remainder of the claim." *Id.* at 1256.

[5] Plaintiff's additional argument that "the specification provides detail about preferred embodiments of the claimed email applications and servers" (Opp. at 20) is contrary to the law and, therefore, need not be considered. As stated

### III. Claim Construction Is Not a Prerequisite to a §101 Analysis

Having failed to establish that the claims of the '967 patent are not abstract or otherwise claim an inventive concept, Plaintiff next argues that Hancock's Motion is premature because no claim construction has yet taken place. Opp. at 14-15. As set forth in Hancock's opening brief, this argument is without merit. The case law is clear. The threshold issue of whether the subject matter of the asserted claims is eligible for patent protection under 35 U.S.C. § 101 is a matter of law appropriately resolved on a Rule 12 Motion. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014); *see also Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 22 F. Supp. 3d 829, 834-35 (E.D. Tex. 2014).[6] In support of its contention that claim construction is required, Plaintiff relies on *Phoenix Licensing v. CenturyLink*, 2015 U.S. Dist. LEXIS 134038, at *9 (E.D. Tex. Sept. 29, 2015). However, unlike the Plaintiff in *Phoenix Licensing,* Plaintiff has not identified *any* claim terms in dispute, let alone any claim constructions that would materially alter the Court's analysis of whether the '967 patent claims patentable subject matter. Courts routinely and consistently rule on patent-eligible subject matter without performing claim construction where, as here, there are no claim construction disputes that are relevant to the §101 question. *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (resolving §101 issues at the pleadings stage); *I/P Engine, Inc. v. AOL, Inc.*, 576 Fed. Appx. 982, 996 (Fed. Cir. 2014) ("there are clear advantages to addressing section 101's requirements at the outset of litigation[,]" including that "[p]atent eligibility issues can often be resolved without lengthy claim construction").

---

recently by the Federal Circuit, "the important inquiry for a §101 analysis is to look to the claim[s]." *Accenture Global Servs. v. Guidewire Software, Inc*., 728 F.3d 1336, 1345 (Fed. Cir. 2013); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

[6] Plaintiff's assertion that whether the '967 patent claims an inventive concept is a "factual dispute" (Opp. at 3) is simply not correct. *Ultramercial*, 772 F.3d at 717. Plaintiff's citation (Opp. at 8) to *SRAM Corp. v. ADII Eng'g.,* 465 F.3d 1351, 1357 (Fed. Cir. 2006) – a case predating *Alice* and dealing with invalidity rejections under 35 U.S.C. §§102 and 103 – is entirely inapplicable.

### IV. Prior Art Is Not Relevant to a §101 Analysis

Plaintiff also repeatedly argues in its Opposition that it is Hancock's burden to demonstrate that the asserted claims are "routine, well-understood, conventional, generic, existing, commonly used, well known, previously known, typical and the like, including when viewed by one of ordinary skill in the art as of the June 29, 2000 priority date." *See, e.g.,* Opp. at 2, 3, 11-12, 14, 16, 17, and 22. Not surprisingly, Plaintiff cites no cases to support this proposition. It is simply not the law. Hancock has moved to dismiss Plaintiff's complaint under 35 U.S.C. § 101. It is not yet seeking a judgment of invalidity under 35 U.S.C. §§ 102 or 103. Plaintiff's arguments regarding "the state of the art at the time of the '967 application" (*see, e.g.,* Opp. at III.B.), therefore, are not relevant. *See, e.g., Wolf v. Capstone Photography*, 2014 U.S. Dist. LEXIS 156527, at *31-32 (C.D. Cal. Oct. 28, 2014) (*quoting Diamond v. Diehr*, 450 U.S. 175, 189 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the §101 categories of possibly patentable subject matter."); *In re Bergy*, 596 F.2d 952, 962-63 (CCPA 1979) ("Prior art is irrelevant to the determination of statutory subject matter under § 101"), *vacated on other grounds.*

### V. Plaintiff's Preemption Argument Is Moot

Plaintiff next argues that the asserted claims are patent eligible because they do not preempt all means for providing a security option to a user when sending an email. Opp. at 22-23. Plaintiff's preemption argument is also misplaced. While preemption of an abstract idea *may* signal that a patent is ineligible under *Alice*, the converse is not true — a lack of preemption does not render a patent *per se* eligible. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the

absence of complete preemption does not demonstrate patent eligibility."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) ("And that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract."); *Inventor Holdings, LLC v. Gameloft, Inc.*, 2015 U.S. Dist. LEXIS 132389, at *34-35 (D. Del. Sept. 30, 2015) ("[T]here is no rule that ideas that do not preempt an entire field are *per se* patent eligible. Rather, the test as articulated by *Alice* is that there must be an inventive contribution on top of the underlying abstract idea."). Furthermore, "questions on preemption are inherent in and resolved by the §101 analysis . . . . [w]here a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Ariosa Diagnostics*, 788 F.3d at 1379. Here, because the claims of the '967 patent are directed to an ineligible abstract idea, the fact that the claims do not entirely preempt that idea is immaterial.

**VI. The '967 Patent Fails the Machine or Transformation Test**

Finally, Plaintiff argues that '967 patent is valid because it allegedly satisfies the "machine-or-transformation" test set forth in *Bilski v. Kappos*, 561 U.S. 593 (2010). Opp. at 24. Specifically, Plaintiff argues that it satisfies both (1) the "machine" prong (because "neither claim 1 nor claim 4 could be performed without "a computer . . . performing each of the steps in each such claim") and (2) the "transformation" prong (because "[i]n the subject claims, product pictures, product environment pictures and text segments are transformed into a single composite visual output and a customized proposal"). Opp. at 25.

As demonstrated above, however, the '967 patent claims only use of a general computer. *See, e.g.,* '967, 2:60-61 ("The secure message-handling tool is installed on a personal computer . . . ."); 5:43-44 ("the present invention has been described for use on a personal computer . . . .");

5:12-15 ("The subject invention is an add-on that seamlessly integrates with MS Outlook 97/98/2000, Express and MS Exchange Client and is a 180KB file that the user can download from a website to install into a computer."). Use of a general purpose computer is insufficient to satisfy the machine or transformation test. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly . . . ."). The cases cited by Plaintiff on this point are inapposite. First, Plaintiff relies on *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) for the proposition that "a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Id.* at 1545. Notably, however, *In re Alappat* predates *Alice* and *Bilski*, which clarified the standard for software directed to abstract concepts and implemented on a computer. Plaintiff also again relies on *TQP Development*, 2014 U.S. Dist. LEXIS 20077, at *18-19 for the proposition that for inventions in the encryption field, transforming data from one form to another may satisfy the machine or transformation test. *TQP* also predates *Alice* by several months. Moreover, as explained above, the patent in that case was "drawn to a very specific method of changing encryption keys" and therefore "contain[ed] an 'inventive concept.'" *See Paone*, 2015 U.S. Dist. LEXIS 109725, at *13. The '967 patent, by contrast, is not.

## VII. Conclusion

For the reasons set forth above and in Hancock's opening brief, Hancock's motion to dismiss should be granted.

Dated: October 26, 2015                                   Respectfully submitted,

                                            */s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
TX State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
(903) 509-5000 (Telephone)
(903) 509-5092 (Facsimile)

Margaret E. Ives
mives@choate.com
Diane C. Seol
dseol@choate.com
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000 (Telephone)
(617) 248-4000 (Facsimile)

ATTORNEYS FOR DEFENDANTS
JOHN HANCOCK FINANCIAL
CORPORATION, JOHN HANCOCK LIFE
INSURANCE COMPANY (U.S.A.), and
THE MANUFACTURERS LIFE
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 26th day of October, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                            */s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth